LENA LOCKLEAR, Plaintiff v. STEPHEN L. LANUTI, M.D., STEPHEN L. LANUTI, M.D., P.A., and SCOTLAND SURGICAL SERVICES, Defendants

No. COA05-900

(Filed 7 March 2006)

**Medical Malpractice— statute of limitations—continuous course of treatment doctrine**

> A de novo review revealed that the trial court erred in a medical malpractice case by granting defendants' motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) based on the expiration of the statute of limitations, because: (1) continuous course of treatment is an exception to the rule that the action accrues at the time of defendant's negligence; (2) on its face, the complaint does not establish that plaintiff knew or should have known that the doctor's conduct was allegedly wrongful during the course of treatment and whether that conduct allegedly caused plaintiff's injuries; (3) whether plaintiff was under the continuous care of the doctor for the injuries which gave rise to the cause of action cannot be resolved as a matter of law from the face of plaintiff's complaint; and (4) taking plaintiff's allegations as true and reviewing them in the light most favorable to plaintiff, it does not appear to a certainty that plaintiff is not entitled to the benefit of the continuing course of treatment doctrine to overcome defendants' statute of limitations defense.

Appeal by plaintiff from order entered 9 May 2005 by Judge Ola M. Lewis in Robeson County Superior Court. Heard in the Court of Appeals 9 February 2006.

LOCKLEAR v. LANUTI

[176 N.C. App. 380 (2006)]

*Mitchell Brewer Richardson, by Ronnie M. Mitchell and Coy E. Brewer, Jr., for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Bryson & Anderson, L.L.P., by Mark E. Anderson, Tobias S. Hampson, and Edward K. Brooks, for defendants-appellees.*

TYSON, Judge.

Lena Locklear ("plaintiff") appeals from the trial court's order granting Stephen L. Lanuti, M.D. ("Dr. Lanuti"), Stephen L. Lanuti, M.D., P.A., and Scotland Surgical services' (collectively, "defendants") motion to dismiss. We reverse and remand.

## I. Background

### A. History of Treatment

On 27 June 2002, plaintiff filed a complaint against defendants in the Robeson County Superior Court alleging medical malpractice by defendants. Plaintiff's complaint alleges the following sequence of events.

On or about 13 January 1997, plaintiff was seen by Dr. Lanuti for complaints of rectal bleeding, weakness, nausea, and vomiting coffee ground gastric contents. On 15 January, Dr. Lanuti performed an outpatient colonoscopy and esophagogastroduodenoscopy (EGD) procedure. Three biopsy specimens were sent to pathology for identification and description. A rectal polyp was identified as "histologically unremarkable rectal mucosa." Plaintiff was instructed to follow up with Dr. Lanuti in one week. The following day, plaintiff telephoned Dr. Lanuti's office with complaints of bleeding and pain. Plaintiff was examined in the emergency room of Scotland Memorial Hospital and Plaintiff was released with instructions to follow up with Dr. Lanuti. On 27 January 1997, Dr. Lanuti diagnosed plaintiff with grade III hemorrhoids.

On 5 February 1997, plaintiff was again admitted to Scotland Memorial Hospital, diagnosed with grade IV hemorrhoids, and Dr. Lanuti performed a hemorrhoidectomy. On 8 February 1997, Dr. Timothy Moses ("Dr. Moses") provided a consultation for plaintiff for urinary retention, fever, and severe perineal pain. Dr. Moses suspected a perirectal abscess.

Dr. Moses performed a cystourethroscopy with bilateral urethral cath placement. On 9 February, Dr. Lanuti performed a diverting end

LOCKLEAR v. LANUTI

[176 N.C. App. 380 (2006)]

colonoscopy with Hartman's Pouch on plaintiff. Plaintiff was discharged from Scotland Memorial Hospital by Dr. Lanuti on 18 February 1997 with final diagnoses of hemorrhoids, a presacral abscess, and insulin-dependent diabetes mellitus. Plaintiff returned for a follow-up with Dr. Lanuti where Dr. Lanuti made a diagnosis of "status post rectal perforation."

On 21 May 1997, Dr. Lanuti performed a rigid proctoscopy and lateral sphincterotomy and diagnosed anal stenosis. Plaintiff was seen by Dr. Lanuti on 29 May 1997 and 26 June 1997 for anal stenosis. Dr. Lanuti admitted plaintiff to Scotland Memorial Hospital for a House Anal Advancement Flap operative procedure. On 27 August 1997, Dr. Lanuti performed another colon and rectum operative procedure on plaintiff. On 11 September 1997, plaintiff was seen in follow-up by Dr. Lanuti where Dr. Lanuti found a wound abscess at the surgical incision. Plaintiff was seen again by Dr. Lanuti on 23 September, 9 December, and 30 December 1997 for continued complaints related to her lower gastrointestinal tract.

On 3 May 1998, plaintiff was admitted to the emergency room where she was diagnosed with an ileus and an incarcerated ventral hernia. Dr. Lanuti performed a repair of plaintiff's hernia. On 22 December 1998, plaintiff was seen by Dr. Delia Chiaramonte ("Dr. Chiaramonte"), who reduced a ventral hernia. Dr. Chiaramonte referred plaintiff back to Dr. Lanuti who performed a repair of multiple incarcerated ventral hernias on 30 December 1997.

On 14 May 1999, plaintiff was again admitted to the Scotland Memorial Hospital. Dr. Lanuti found "a ventral abdominal wall hernia with numerous small bowel loops through the defect in the subcutaneous tissues about the umbilicus." Dr. Lanuti performed a repair of recurrent incarcerated ventral hernias with Gortex mesh. Plaintiff returned to Dr. Lanuti for an open wound which "communicates with" the Gortex mesh and which became infected. Plaintiff was admitted to Duke University Medical Center on 13 July 1999, and was seen by Dr. Salvatore Lettieri and Dr. John P. Grant, who made a diagnosis of infected Marlex mesh and performed a repair of a ventral hernia with persistent post-operative fistula. Plaintiff was discharged from Duke University Medical Center on 28 July 1999. Plaintiff has since undergone further surgery.

## B. Procedural History

Plaintiff filed suit against Dr. Lanuti in Robeson County Superior Court on 27 June 2002 alleging Dr. Lanuti was negligent in: (1) remov-

ing viable mucosa tissue on 15 January 1997, which he mistakenly identified as a polyp, causing plaintiff to suffer a rectal perforation which Dr. Lanuti failed to timely diagnose; (2) misdiagnosing the presence of hemorrhoids when plaintiff had a perirectal abscess; (3) failing to possess the requisite knowledge, training, and skill necessary to perform the procedures that were performed upon plaintiff, and failing to adequately diagnose plaintiff's condition; (4) failing to make a timely referral for plaintiff to a tertiary care center when he knew or should have known that plaintiff's condition was deteriorating; and (5) using a Gortex mesh in plaintiff's ventral hernia repairs when Dr. Lanuti knew or should have known the use of such mesh was not indicated for plaintiff's condition.

Defendants moved to dismiss all of plaintiff's claims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2005). The trial court granted defendants' motion to dismiss by order dated 4 April 2005. Plaintiff appeals.

## II. Issues

Plaintiff argues the trial court erred in: (1) allowing defendants' motion to dismiss; (2) considering matters outside the pleadings over plaintiff's objection when considering defendants' motion to dismiss; and (3) failing to make specific findings of fact and conclusions of law, and refusing to consider plaintiff's timely request for findings and conclusions under Rule 52 of the North Carolina Rules of Civil Procedure with respect to its order allowing defendants' motion to dismiss.

## III. Motion to Dismiss

### A. Standard of Review

Our standard of review of an order allowing a motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In ruling upon such a motion, the complaint is to be liberally construed, and the court should not dismiss the complaint "unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987).

*Holloman v. Harrelson*, 149 N.C. App. 861, 864, 561 S.E.2d 351, 353 (2002). A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. *Sutton v. Duke*, 277 N.C. 94, 102-03, 176 S.E.2d 161, 166 (1970). "If the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim it will be dismissed." *Id.* at 102, 161 S.E.2d at 166.

We review the trial court's grant of a motion to dismiss *de novo*. *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003), *aff'd*, 357 N.C. 567, 597 S.E.2d 673 (2003).

### B. Statute of Limitations

Defendants contend plaintiff's claims are barred by the statute of limitations. N.C. Gen. Stat. § 1-15(c) (2005) provides the statute of limitations for medical malpractice claims:

> Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person . . . which originates under circumstances making the injury . . . not readily apparent to the claimant at the time of its origin, and the injury . . . is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided *nothing herein shall be construed to reduce the statute of limitation in any such case below three years.*

(Emphasis supplied). Plaintiff filed her complaint against defendants on 27 June 2002. Absent an exception to the three-year statute of limitations, all of defendants' alleged negligent acts occurred prior to 27 June 1999 and are barred. Defendants asserted an affirmative defense of statute of limitations in their answer.

### C. Continuous Course of Treatment Doctrine

Plaintiff argues she alleges facts in her complaint to show a "continuous course of treatment," which is an exception to the rule that " 'the action accrues at the time of the defendant's negligence.' "

*Stallings v. Gunter*, 99 N.C. App. 710, 714, 394 S.E.2d 212, 215 (1990) (quoting *Ballenger v. Crowell*, 38 N.C. App. 50, 58, 247 S.E.2d 287, 293 (1978)).

> According to this doctrine, the action accrues at the conclusion of the physician's treatment of the patient, so long as the patient has remained under the continuous treatment of the physician for the injuries which gave rise to the cause of action. It is not necessary under this doctrine that the treatment rendered subsequent to the negligent act itself be negligent, if the physician continued to treat the patient for the particular disease or condition created by the original act of negligence.

> To take advantage of the 'continuing course of treatment' doctrine, plaintiff must show the existence of a *continuing* relationship with [her] physician, and . . . that [she] received *subsequent* treatment from that physician. Mere continuity of the general physician-patient relationship is insufficient to permit one to take advantage of the continuing course of treatment doctrine. Subsequent treatment must consist of either an affirmative act or an omission, [which] must be related to the original act, omission, or failure which gave rise to the cause of action. However, plaintiff is not entitled to the benefits of the 'continuing course of treatment' doctrine if during the course of the treatment plaintiff knew or should have known of his or her injuries.

*Id.* at 714-15, 394 S.E.2d at 215-16 (internal citations and quotation marks omitted).

"[T]he doctrine tolls the running of the statute for the period between the original negligent act and the ensuing discovery and correction of its consequences; the claim still accrues at the time of the original negligent act or omission." *Horton v. Carolina Medicorp, Inc.* 344 N.C. 133, 137, 472 S.E.2d 778, 780-81 (1996). Our Supreme Court stated the reason for the rule as follows: "[T]he doctrine rests on the theory that 'so long as the relationship of [physician] and patient continued, the [physician] was guilty of malpractice during that entire relationship for not repairing the damage he had done.' " *Id.* (quoting *Ballenger*, 38 N.C. App. at 58, 247 S.E.2d at 293).

### D. Plaintiff Knew or Should Have Known

Defendants argue plaintiff should lose the benefit of the continuous course of treatment doctrine because "plaintiff knew or should have known of . . . her injuries" during the course of Dr.

Lanuti's treatment. *Stallings*, 99 N.C. App. at 715, 394 S.E.2d at 216. We disagree.

"An injury may be readily apparent but the fact of wrong may lay hidden. It is only when the plaintiff knew or should have known that this wrongful act caused his injury that the plaintiff loses the benefit of the continuing course of treatment doctrine." *Whitaker v. Akers*, 137 N.C. App. 274, 280-81, 527 S.E.2d 721, 726 (2000). In *Akers*, this Court held, "while there is no question that the plaintiff knew he was incontinent and impotent, there is some question whether he knew or should have known that the defendant's conduct was wrongful and whether that conduct caused his incontinence and impotence, prior to the running of the statute of limitations." *Id.* at 281, 527 S.E.2d at 726. On its face, the complaint does not establish that plaintiff knew or should have known that Dr. Lanuti's conduct was allegedly wrongful during Dr. Lanuti's course of treatment and whether that conduct allegedly caused plaintiff's injuries. *Id.*

### E.  Plaintiff's Allegations

Plaintiff's complaint alleges Dr. Lanuti treated plaintiff for several different ailments. Plaintiff was first seen by Dr. Lanuti for complaints of rectal bleeding, weakness, nausea, and vomiting. Dr. Lanuti performed a colonoscopy and EGD procedure on 15 January 1997. Plaintiff alleges Dr. Lanuti was negligent in removing viable mucosa tissue, causing plaintiff to suffer a rectal perforation which Dr. Lanuti failed to timely diagnose. The question remains whether Dr. Lanuti's continuing course of treatment was related to Dr. Lanuti's initial alleged negligence. *Stallings*, 99 N.C. App. at 714-15, 394 S.E.2d at 215-16.

Also, the question remains whether plaintiff's abscess, which was allegedly undiagnosed by Dr. Lanuti, was related to Dr. Lanuti's further and continuous treatment of plaintiff. *Id.*

Plaintiff also alleges Dr. Lanuti was negligent in failing to refer her to a tertiary care center when he knew or should have known her condition was deteriorating. A question remains whether plaintiff remained under the continuous care of Dr. Lanuti, and Dr. Lanuti failed to refer plaintiff to a tertiary care center throughout that time period. *Id.*

Plaintiff also alleges Dr. Lanuti was negligent in repairing her hernias with a Gortex mesh that was not indicated for plaintiff's condition. Plaintiff was subsequently seen by Dr. Lanuti for a "one (1) cm

open wound that communicates with the gortex and was infected." Whether plaintiff was under the continuous care of Dr. Lanuti for the injuries which gave rise to the cause of action also cannot be resolved as a matter of law from the face of plaintiff's complaint. *Id.*

In ruling on a motion to dismiss, the trial court must take all allegations in plaintiff's complaint as true, and every reasonable inference must be drawn in favor of plaintiff. *Grindstaff v. Byers*, 152 N.C. App. 288, 293, 567 S.E.2d 429, 432 (2002). "In general, a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*" *Harris v. NCNB*, 85 N.C. App. 669, 671, 355 S.E.2d 838, 840 (1987) (citation omitted).

Here, taking plaintiff's allegations as true and reviewing them in the light most favorable to plaintiff, it does not appear "to a certainty" that plaintiff is not entitled to the benefit of the continuing course of treatment doctrine to overcome defendants' statute of limitations defense. *Id.* The trial court erred in granting defendants' motion to dismiss.

## IV. Conclusion

The trial court erred in granting defendants' motion to dismiss. Viewed in the light most favorable to plaintiff, the allegations of the complaint are sufficient to raise an issue of whether plaintiff is entitled to the benefit of the continuing course of treatment doctrine to toll the expiration of the statute of limitations. In so ruling, we express no opinion on the ultimate merits, if any, of plaintiffs allegations and claims.

In light of our decision, it is unnecessary to address plaintiff's remaining assignments of error. The trial court's order is reversed and this case is remanded for further proceedings.

Reversed and remanded.

Judges HUDSON and GEER concur.