REMER W. GRINER, SR., and SHIRLEY A. GRINER
v.
REMER W. GRINER, JR., and AMY L. GRINER.
No. COA06-1579
Court of Appeals of North Carolina.
Filed November 6, 2007
This case not for publication
Todd E. McCurry, for plaintiffs-appellants.
Smith, Smith & Harjo by Jennifer Harjo, for defendant-appellee Amy L. Griner.
Cynthia C. Locklear, for defendant-appellee Remer W. Griner, Jr.
STEELMAN, Judge.
When the trial court has jurisdiction to make an initial child-custody determination, the court has jurisdiction to modify a child-custody determination, and the court has jurisdiction to rule on defendants' motions to dismiss plaintiffs' Complaint for Custody and Child Support. When plaintiffs' custody complaint failed to sufficiently allege facts of unfitness of mother or father, the court did not err in dismissing plaintiffs' claim.
D.A.G. was born on 10 March 1998 to Remer W. Griner, Jr. ("father") and Amy L. Griner ("mother") (together, "defendants"). On 12 March 2003, father and mother divorced. At that time they were residents of the state of Nebraska. As part of the divorce decree, the District Court of Lancaster County, Nebraska awarded joint legal custody, with father having primary physical custody of D.A.G. Mother was awarded reasonable visitation. Neither party was ordered to pay child support.
Remer W. Griner, Sr., and his wife, Shirley A. Griner ("plaintiffs") are the parents of Remer W. Griner, Jr. Plaintiffs were not parties to the Nebraska proceedings and were not granted any custody or visitation with the minor child. All parties are formerly residents of Nebraska.
In 2004, father and D.A.G. moved to New Hanover County, North Carolina, and mother moved to Wake County, North Carolina. In 2005, plaintiffs moved to Lawrenceville, Georgia.
On 6 June 2006, plaintiffs filed a complaint against defendants pursuant to N.C. Gen. Stat. § 50-13.1, seeking custody of the minor child, along with temporary visitation and child support, and contending that the parents were unfit to care for D.A.G. At the time of the filing of the complaint, defendants had been residents of North Carolina for more than six months.
On 26 June 2006, mother filed a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) and a motion for sanctions and attorneys' fees pursuant to N.C. Gen. Stat. § 1A-1, Rule 11. On 3 July 2006, father also filed a motion to dismiss and a motion for sanctions and attorneys' fees. On 21 September 2006, the trial court granted defendants' motions to dismiss but denied their motions for Rule 11 sanctions and attorneys' fees. From this order, plaintiffs appeal.

I. Jurisdiction
We first address the question of whether the trial court had jurisdiction over this matter.
N.C. Gen. Stat. § 50A-203 governs the jurisdiction of a court of this State to modify a child custody determination made by a court of another state:
[A] court of this State may not modify a child-custody determination made by a court of another state unless a court of this State has jurisdiction to make an initial determination under G.S. 50A-201(a)(1) or G.S. 50A-201(a)(2) and: . . . A court of this State . . . determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.
Id.
N.C. Gen. Stat. § 50A-201(a)(1) and (a)(2) require the following:
[A] court of this State has jurisdiction to make an initial child-custody determination only if:
(1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under G.S. 50A-207 or G.S. 50A-208, and:
a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
b. Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships[.]
Id.
N.C. Gen. Stat. § 50A-102(7) provides a definition for "home state":
[T]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding.
Id.
The trial court made the following pertinent findings of fact:
4. Following entry of the Nebraska court order, the Defendants and the minor child moved to the state of North Carolina where the Defendants have been sharing custody of their minor child in accordance with the Nebraska order.
. . .
8. North Carolina is the home state of the minor child.
9. Despite the prior custody order which [sic] properly entered in the jurisdiction of the State of Nebraska, the Plaintiff/grandparents properly filed their custody action within the State of North Carolina. The grandparents are permitted to file their custody action as a new action in North Carolina alleging that the parents are unfit to exercise custody of their minor child.
As the custody of D.A.G. had been previously decided by the Nebraska court, we must determine whether a court of this State had jurisdiction to modify the child custody order pursuant to N.C. Gen. Stat. § 50A-203. Because the trial court determined that D.A.G. and her parents currently reside in North Carolina, and have resided in North Carolina for more than six months, a court of this State had jurisdiction to make an initial determination pursuant to N.C. Gen. Stat. § 50A-201(a)(1). Further, the court found that D.A.G. and her parents "do not presently reside in the other state." Therefore, we conclude that the trial court had jurisdiction to modify the child custody order.

II. Motion to Dismiss
In their sole argument on appeal, plaintiffs contend that the trial court erred in granting defendants' motions to dismiss. We disagree.
Our standard of review of an order allowing a motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not."Locklear v. Lanuti, 176 N.C. App. 380, 383, 626 S.E.2d 711, 714 (2006) (citation omitted). "In ruling upon such a motion, the complaint is to be liberally construed, and the court should not dismiss the complaint `unless it appears beyond doubt that [the] plaintiff could prove no set of facts insupport of his claim which would entitle him to relief.'" Holloman v. Harrelson, 149 N.C. App. 861, 864, 561 S.E.2d 351, 353 (2002) (citation omitted). A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. Sutton v. Duke, 277 N.C. 94, 102-103, 176 S.E.2d 161, 166 (1970). "If the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim it will be dismissed." Id. at 102, 176 S.E.2d at 166.
"This Court must conduct a de novo review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." Leary v. N.C. Forest Prods., Inc., 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003).
N.C. Gen. Stat § 50-13.1(a) governs actions for seeking custody of a minor child, and provides, in pertinent part, the following: "Any. . . relative. . . claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child[.]" Id. "When grandparents initiate custody lawsuits under G.S. 50-13.1(a), those grandparents. . . must show that the parent is unfit or has taken action inconsistent with her parental status in order to gain custody of the child." Eakett v. Eakett, 157 N.C. App. 550, 553, 579 S.E.2d 486, 489 (2003) (internal citations omitted). This is because natural parents have a constitutionally protected interest in the companionship, custody, care, and control of their children. Petersen v. Rogers, 337 N.C. 397, 445 S.E.2d 901 (1994).
"Where a parent has acted in a manner inconsistent with his or her constitutionally protected custody right, that right must give way to a `best interest of the child' analysis under G.S. § 50-13.2(a)." Penland v. Harris, 135 N.C. App. 359, 362, 520 S.E.2d 105, 107 (1999) (citing Price v. Howard, 346 N.C. 68, 484 S.E.2d 528 (1997)). In Penland, this Court stated that:
There is no bright line rule to determine what conduct on the part of a natural parent will result in a forfeiture of the constitutionally protected status and trigger application of a "best interest" analysis. Unfitness, abandonment, and neglect are certainly so egregious that a parent who engages in such behavior forfeits constitutional protections. . . . The fact that the third party is able to offer the minor child a higher standard of living does not overcome a natural parent's paramount interest in the custody and control of the child. And, parental control over a child's associations is not behavior inconsistent with parental responsibilities; it is instead a fundamental part of the parent's right to custody.
Id.
In the instant case, plaintiffs made the following allegations as to mother's unfitness:
18. That based upon information and belief at the time of the divorce the child psychologist for the minor child, Dr. Williams, indicated that the Defendant Mother was not fit to have primary physical custody of the minor child.
19. That the Defendant Mother has demonstrated that she is prone to fits of extreme outrage and emotional outbursts toward the Defendant Father and the minor child.
20. That the Defendant Mother, when attempting to cope with the normal day-to-day activities of child care, repeatedly made phone calls to the Defendant Father or the Paternal Grandmother in order to complain about the day to day problems dealing with the minor child.
21. That based upon information and belief the Defendant Mother has previously been treated by a psychologist.
22. That the Defendant Mother is behaving inconsistently with her parental rights in that she pays no child support on behalf of her minor child.
23. That the Defendant Mother is believed to be cohabitating with a member of the opposite sex and works out of town several nights a week.
The trial court determined that the allegations contained in paragraphs 18 through 21 of the complaint alleged circumstances existing prior to the entry of the Nebraska court order, and could not constitute a legal basis for change in custody. See Shipman v. Shipman, 357 N.C. 471, 473-74, 586 S.E.2d 250, 253 (2003) (noting the well-established principle that a trial court may modify an existing child custody order only upon the showing of a "substantial change of circumstances affecting the welfare of the child" that warrants a change in custody (citation omitted)). The court further found that allegation number twenty-two failed to support any claim for unfitness, because the Nebraska court order provided that "neither party shall pay child support to the other." The court also ruled that even if mother was cohabitating with a member of the opposite sex and working out of town several nights per week, the allegation did not rise to the level of unfitness. See Browning v. Helff, 136 N.C. App. 420, 524 S.E.2d 95 (2000) (concluding that a parent's cohabitation alone does not constitute a substantial change in circumstances affecting the minor child). The court concluded that the foregoing allegations failed to constitute allegations of unfitness of mother, and failed to state a claim for the modification of the child custody order as it pertained to mother.
Plaintiffs made the following allegations as to father's unfitness:
24. That the Defendant Father is not behaving in a fit and proper manner to care for the minor child in that he is married to a person known to have an abusive past towards her prior stepchild.
25. That the Defendant Father's current wife was not capable of relating to her prior stepchild and provided inadequately for her as well.
26. That the Defendant Father's current wife engages in harsh discipline towards the minor child, and when the Defendant Father is confronted about this he currently denies or sides with the stepmother.
27. That based upon information and belief the Defendant Father's current wife is engaged in a pattern of practice of intimidation and suffocation of the minor child to prevent the minor child from interfering in the stepmother's own social and marital agenda.
28. That based upon information and belief, the minor child's development is being greatly injured by this behavior on the part of the stepmother which has been tacitly allowed by the Defendant Father.
29. That based upon information and belief the minor child has been diagnosed with high functioning autism.
30. That the minor child is suffering emotional problems due to her treatment in the Defendant Father's home.
31. That the Defendant Father works late as many as four (4) nights a week thereby leaving the minor child with her stepmother.
32. That the Defendant Father is guilty by failing to act to protect his minor child from the mental duress and isolation she is currently under.
The trial court determined that the allegations in paragraphs twenty-four through twenty-seven relate to the stepmother, not father. The court found that "even if said allegations are found to be true. . . such allegations do not permit this Court to find the father unfit." Although the North Carolina General Statutes permit a court to adjudge a juvenile to be abused or neglected based upon acts by a "parent, guardian, custodian, or caretaker," or an "adult who regularly lives in the home," N.C. Gen. Stat. § 7B-101(1), (15), plaintiffs did not contend any illegal activity or abusive behavior by the stepmother that would support a finding of father's unfitness. Compare In re Rholetter, 162 N.C. App. 653, 660-61, 592 S.E.2d 237, 241-42 (2004) (affirming the trial court's custody award to the minor children's biological mother where respondent father had knowledge that his daughters were being abused by his wife and failed to protect them and had no plans to divorce his wife). Further, the court found that the remaining allegations were not sufficient to state a claim of father's unfitness. Therefore, plaintiffs' complaint failed to state a claim upon which relief could be granted by the trial court as to father under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6).
The remaining portions of plaintiffs' complaint focuses on plaintiffs' role in D.A.G.'s life, and asserts that an order granting custody of D.A.G. to plaintiffs is in her best interests. Such allegations fall short of establishing that defendants acted in a manner inconsistent with their constitutionally protected status. A best interests analysis is not appropriate absent a finding that the natural parents are unfit or have neglected the welfare of their children. See McDuffie v. Mitchell, 155 N.C. App. 587, 591, 573 S.E.2d 606, 609 (2002).
The allegations in the complaint here are insufficient to state a claim upon which relief may be granted. When the allegations are viewed in the light most favorable to plaintiffs and granting plaintiffs the benefit of every reasonable inference, we conclude that the complaint fails to sufficiently allege acts that would constitute "unfitness, neglect, [or] abandonment," or any other type of conduct so egregious as to result in defendants' forfeiture of their constitutionally protected status as parents. See Ellison v. Ramos, 130 N.C. App. 389, 399, 502 S.E.2d 891, 897 (1998).
The complaint here is insufficient to state a claim under N.C. Gen. Stat. § 50-13.1(a) on behalf of plaintiffs for custody of defendants' minor child. We therefore affirm the trial court's order dismissing plaintiffs' custody claim.
AFFIRMED.
Chief Judge MARTIN and Judge STEPHENS concur.
Report per Rule 30(e).