AUSTIN HATCHER REALTY, INC., Plaintiff,
v.
HAZEL GAITHER ARNOLD, MICHAEL JAMES ARNOLD, ROGER WADE ARNOLD, CHARLES TONY ARNOLD, JAMES ARNOLD and JAMES KEITH ARNOLD, Defendants.
No. COA07-1377
North Carolina Court of Appeals
Filed June 3, 2008
This case not for publication
Ward and Smith, P.A., by Thomas S. Babel and Ryal W. Tayloe, for plaintiff-appellant.
Marshall, Williams & Gorham, L.L.P., by John L. Coble, for defendant-appellee Hazel Gaither Arnold.
The Chandler Law Firm, P.A., by John Calvin Chandler, for defendants-appellees Michael James Arnold, Charles Tony Arnold, James Arnold, and James Keith Arnold.
WYNN, Judge.
As we have previously noted, "appellate review of the dismissal of an action under North Carolina Rule of Civil Procedure 12(b)(6) is subject to more stringent rules than other procedural postures that come before us."[1] When conducting such a review, we"test the law of the claim, not the facts which support it."[2] Here, because we find that Plaintiff Austin Hatcher Realty, Inc. has alleged facts sufficient to support its claims for breach of contract and unjust enrichment against Defendants, we reverse the trial court's order dismissing the complaint.
According to the allegations in the complaint filed by Hatcher Realty, Rufus and Hazel Arnold signed an Exclusive Right to Sell Listing Agreement with Hatcher Realty on 19 May 2004, for property located at 271 Smith Avenue in Shallotte, North Carolina, held only in the name of Rufus Arnold. The Listing Agreement provided that the purchase price for the property would be $1.1 million, with a ten percent commission of one hundred thousand dollars to be paid to Hatcher Realty. It further stated that the commission "shall be deemed earned":
(a) If a ready, willing and able buyer is procured by Agent, the Seller, or anyone else during the Term of this Agreement at the price and on the terms set herein, or at any price and terms acceptable to the Seller;
(b) If the property is sold, exchanged, conveyed or transferred, or the Seller agrees to sell, exchange, convey or transfer the Property at any price and on any terms whatsoever, during the Term of this Agreement or any renewal hereof;
(c) If, within 160 days after expiration of the Term of this Agreement (the "Protection Period"), Seller either directly or indirectly sells, exchanges, conveys or transfers, or agrees to sell, exchange, convey or transfer the Property upon any term whatsoever, to any person with whom Seller, Agent, or any real estate licensee communicated regarding the Property during the Term of this Agreement or any renewal hereof, provided the names of such persons are delivered or postmarked to the Seller within 15 days from date of expiration. HOWEVER, Seller shall NOT be obligated to pay such fee if a valid listing agreement is entered into between Seller and another real estate broker and the Property is sold, exchanged, conveyed or transferred during such Protection Period.
Six days after signing the Agreement, Mr. Arnold executed a power of attorney to Ms. Arnold. However, Mr. Arnold died intestate three weeks later, extinguishing the power of attorney. Under operation of law, the Smith Avenue property passed outside of the estate to Ms. Arnold and Mr. Arnold's five sons as tenants in common. Ms. Arnold was appointed administrator of Mr. Arnold's estate on 6 July 2004.
According to the complaint, Ms. Arnold subsequently signed "on behalf of herself, the Estate and as agent of the Beneficiaries" extensions of the Listing Agreement with Hatcher Realty on 16 November 2004 and 12 May 2005. Mr. Arnold's estate was closed on 8 July 2005. The complaint alleged that Ms. Arnold, again "on behalf of herself, the Estate and as agent of the Beneficiaries," signed another six-month extension of the agreement on 26 September 2005, to last until 30 March 2006. On 21 October 2005, Ms. Arnold petitioned the trial court for an order to sell the Smith Avenue property as one parcel; she then filed a motion to sell by private sale and appoint a commissioner on 15 November 2005. The complaint further states that Austin Hatcher, of Hatcher Realty, met with Tonia Twigg, the attorney for Mr. Arnold's estate, to assist her with preparing for the hearing on the motion to sell by private sale. On 30 December 2005, Hampton Coastal, Inc. executed an Offer to Purchase and Contract for the purchase of the Smith Avenue property at the listed price of $1.1 million. Hatcher Realty alleges in the complaint that Ms. Twigg "represented to Hatcher Realty that the sale of the Property," presumably to Hampton Coastal, "would go through once the Court granted the Motion filed by" Ms. Arnold for a private sale and that Hatcher Realty would receive its commission once the Smith Avenue property was sold. The complaint likewise asserts that Ms. Arnold also "represented to Austin Hatcher that Hatcher Realty would be paid its Commission once the Property was sold."
On 12 January 2006, the court granted the motion for the property to be sold as a single parcel and appointed Ms. Twigg, the estate attorney, as the commissioner. Neither Ms. Arnold nor Ms. Twigg acted on the offer from Hampton Coastal, despite numerous attempts by Hampton Coastal and Hatcher Realty to contact them. On 23 May 2006, the court ordered the sale of the Smith Avenue property to Mac Construction Company for a purchase price of $1.2 million. According to the complaint, Mac Construction was a potential buyer that Hatcher Realty had contacted during the course of the Listing Agreement.
The sale was confirmed on 27 June 2006, with the proceeds distributed to the estate beneficiaries. The final accounting fromthe sale was approved by the court on 15 August 2006. However, Ms. Arnold and the other beneficiaries refused to pay the commission to Hatcher Realty, who filed a complaint on 7 February 2007, amended on 12 April 2007, for breach of contract and unjust enrichment. Following answers filed by Ms. Arnold and the other beneficiaries, Ms. Arnold filed a Rule 12(b)(6) motion to dismiss, which was granted on 9 July 2007 after a hearing before the trial court.
Hatcher Realty now appeals the trial court's order (I) denying its motion to strike Ms. Arnold's motion to dismiss; (II) dismissing its complaint for breach of contract; and (III) dismissing its complaint for unjust enrichment.

I.
Hatcher Realty first argues that the trial court erred by denying its motion to strike Ms. Arnold's motion to dismiss. According to Hatcher Realty, the motion to dismiss "fail[ed] to state with particularity the grounds" on which it was based, such that it should be stricken pursuant to Rules 12(f) and 7(b)(1) of the North Carolina Rules of Civil Procedure. We find this argument to be without merit.
Rule 7(b)(1) requires that a motion "shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." N.C. Gen. Stat. § 1A-1, Rule 7(b)(1) (2005). Significantly, we have noted that a "motion, to satisfy the requirements of Rule 7(b)(1), must supply information revealing the basis of the motion." Smith v. Johnson, 125 N.C. App. 603, 606, 481 S.E.2d 415, 417 (citation omitted), disc. reviewdenied, 346 N.C. 283, 487 S.E.2d 554 (1997). We have also repeatedly indicated that the purpose of the particularity requirement is to ensure that "the trial court and the opposing party [are not left] to guess what the particular grounds might be," N.C. Alliance for Transp. Reform Inc. v. N.C. Dep't of Transp., 183 N.C. App. 466, 470, 645 S.E.2d 105, 108, disc. review denied, 361 N.C. 569, 650 S.E.2d 812 (2007), "[f]or where court and adverse party cannot comprehend the basis of a motion, they are rendered powerless to respond to it." Dusenberry v. Dusenberry, 87 N.C. App. 490, 492, 361 S.E.2d 605, 606 (1987).
In the instant case, Ms. Arnold's motion indeed stated that she sought a dismissal of Hatcher Realty's complaint "for failing to state a claim upon which relief can be granted[.]" She made no argument as to an affirmative defense to Hatcher Realty's claims. See Johnson v. N.C. Dep't of Transp., 107 N.C. App. 63, 66, 418 S.E.2d 700, 702 (1992) (noting that, if a defendant is arguing an affirmative defense in support of a motion to dismiss, "the motion must ordinarily refer expressly to the affirmative defense relied upon," unless "the non-movant has not been surprised and has full opportunity to argue and present evidence on the affirmative defense." (citations and quotations omitted)).
We find Ms. Arnold's statement that she was seeking dismissal of the complaint "for failing to state a claim upon which relief can be granted" sufficient to "reveal[] the basis of the motion," as the essence of a Rule 12(b)(6) motion is that the plaintiff is entitled to no relief under any state of facts that could bepresented in support of the claims. Ladd v. Estate of Kellenberger, 314 N.C. 477, 481, 334 S.E.2d 751, 755 (1985). Each of the cases cited by Hatcher Realty, in which motions were held to be improper for a lack of particularity, involved either Rule 59 or Rule 60 motions; none concerned a Rule 12(b)(6) motion. Indeed, Hatcher Realty's argument that Ms. Arnold's motion did not provide it with sufficient notice of the basis for dismissal, such that its defense at the hearing on the motion was impaired, is feckless. To defeat the motion to dismiss, Hatcher Realty needed to argue at the hearing only that its complaint alleged facts to support a legal claim against Ms. Arnold and the other beneficiaries. See N.C. Gen. Stat. § 1A-1, Rule 12(b)(6); Piles v. Allstate Ins. Co., ___ N.C. App. ___, ___, 653 S.E.2d 181, 184 (2007) (noting that a motion to dismiss should be denied when "as a matter of law, the allegations of the complaint are sufficient to state a claim upon which relief can be granted under some legal theory.").
Accordingly, we affirm the trial court's denial of Hatcher Realty's motion to strike the motion to dismiss.

II.
Next, Hatcher Realty argues that the trial court erred by granting Ms. Arnold's motion to dismiss on the merits. Hatcher Realty contends that it has alleged sufficient facts that, when taken in the light most favorable to Hatcher Realty, would constitute a breach of contract by Ms. Arnold as well as a claim for unjust enrichment.
We note at the outset that "appellate review of the dismissalof an action under North Carolina Rule of Civil Procedure 12(b)(6) is subject to more stringent rules than other procedural postures that come before us." Okuma Am. Corp. v. Bowers, 181 N.C. App. 85, 88, 638 S.E.2d 617, 619 (2007); see also N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2005). When conducting such a review, we consider only the question of whether, as a matter of law, the allegations of the complaint are sufficient to state a claim upon which relief can be granted under some legal theory. Id. Thus, we must accept as true the well-pleaded factual allegations of the complaint and review the case de novo "to test the law of the claim, not the facts which support it." White v. White, 296 N.C. 661, 667, 252 S.E.2d 698, 702 (1979) (quotation and citation omitted); see also Locklear v. Lanuti, 176 N.C. App. 380, 383, 626 S.E.2d 711, 714 (2006).
To state a claim for breach of contract, a "plaintiff must demonstrate that a valid contract existed which terms were breached by the defendant." Jackson v. Carolina Hardwood Co., 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995). Here, the facts alleged in Hatcher Realty's complaint, when taken as true, demonstrate that a valid contract existed between Hatcher Realty and Ms. Arnold from 19 May 2004, when the original Listing Agreement was signed, until the extension signed on 16 November 2004. At that point, under the facts outlined in the complaint, particularly the assertion that Ms. Arnold signed the extension "on behalf of herself, the Estate and as agent of the Beneficiaries" (emphasis added), the contract continued to exist between Hatcher Realty and all of the tenants incommon in the Smith Avenue property. The Agreement was then valid through the two subsequent extensions signed by Ms. Arnold "on behalf of herself, the Estate and as agent of the Beneficiaries," ultimately expiring on 30 March 2006. When taken as true, this allegation is sufficient to show ratification by the beneficiaries of Ms. Arnold's actions and effort to sell the property as a single parcel, and therefore to bind them to the contract. See LDDC, Inc. v. Pressley, 71 N.C. App. 431, 433, 322 S.E.2d 416, 417 (1984) (holding that a tenant "may not bind a co-tenant by any act relating to the common property in the absence of ratification or estoppel.") (citing Hinson v. Shugart, 224 N.C. 207, 29 S.E.2d 694 (1944)).
Given that the complaint shows that a valid contract existed between Hatcher Realty and the tenants in common of the Smith Avenue property, Hatcher Realty's claim rests on whether its complaint in turn alleges facts sufficient to show a breach of that contract. Hatcher Realty's complaint asserts two specific breaches of the Listing Agreement by Ms. Arnold: first, that she was presented with a ready, willing, and able buyer for the listed price for the Smith Avenue property, namely, Hampton Coastal; and second, that Hatcher Realty contacted Mac Construction Company about the Smith Avenue property during the term of the Agreement, and Mac Construction was the ultimate buyer.
When taken as true, these actions could constitute breaches of the specific terms of the Listing Agreement. Moreover, if Ms. Arnold did have authority to sign the extensions of the Agreementon behalf of herself and as agent of the other beneficiaries, as asserted by Hatcher Realty in its complaint, then these actions also took place on dates within the term of the Agreement and the 160-day "Protection Period" defined in the Agreement, respectively. Accordingly, we reverse the trial court's dismissal of Hatcher Realty's complaint for failure to state a claim for breach of contract.[3]

III.
Finally, Hatcher Realty argues that the trial court erred by dismissing its complaint for unjust enrichment. We disagree.
To state a claim for unjust enrichment, the plaintiff's allegations must set forth that a benefit was conferred on the defendant, that the defendant accepted the benefit, and that the benefit was not gratuitous. Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556, reh'g denied, 323 N.C. 370, 373 S.E.2d 540 (1988). Hatcher Realty's complaint includes no specificallegations as to what benefits were conferred on Ms. Arnold, only the statement that "Hatcher Realty provided services" that were accepted by Ms. Arnold, from which she benefitted and for which she has refused to pay. At the hearing on the motion to dismiss, Hatcher Realty argued that these services included assistance to Ms. Twigg in preparing for the hearing on the motion to sell by private sale, partly due to representations that Hatcher Realty would still be paid its commission when the sale was completed.
We find these facts as alleged to be insufficient to state a claim for unjust enrichment. Hatcher Realty has not claimed that Ms. Arnold and the other beneficiaries would not have been able to sell the Smith Avenue property without their "services" and have thus failed to assert facts that would show that a benefit was conferred on Ms. Arnold and the other beneficiaries, or that they accepted the benefit. Id. Further, Austin Realty has not made any showing that the preparation for the hearing on the motion to sell was a benefit that was not gratuitous, id., such that the assistance would not have been provided absent the alleged promise of payment of the commission.
Accordingly, we affirm the trial court's dismissal of Hatcher Realty's claim for unjust enrichment.
Affirmed in part and reversed in part.
Judges CALABRIA and GEER concur.
Report per Rule 30(e).
NOTES
[1] Okuma Am. Corp. v. Bowers, 181 N.C. App. 85, 88, 638 S.E.2d 617, 619 (2007); see also N.C. Gen. Stat. § 1A-1, Rule12(b)(6) (2005).
[2] White v. White, 296 N.C. 661, 667, 252 S.E.2d 698, 702 (1979) (quotation and citation omitted); see also Locklear v. Lanuti, 176 N.C. App. 380, 383, 626 S.E.2d 711, 714 (2006).
[3] Ms. Arnold and the other beneficiaries argue to this Court that the proceedings initiated by Ms. Arnold to partition the property by sale should remove the court-approved sale of the Smith Avenue property from the provisions of the Listing Agreement. However, the partition proceeding was voluntarily initiated by Ms. Arnold; it was neither court-ordered nor dictated, and we conclude that Ms. Arnold cannot hide behind those proceedings to avoid the responsibilities she owes under the terms of the Listing Agreement.

Moreover, even with a pending partition proceeding, the tenants in common were still legally free to sell, transfer, or convey their respective interests in the Smith Avenue property; although the court had jurisdiction over the issue of partition, it did not "own" the property, nor did the action suspend any of the ownership rights of the tenants in common. If, as alleged in the complaint, the Listing Agreement was agreed to by all of the tenants in common, then it was still in force and unaffected by the partition proceedings.